# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC HERSHLER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CITIBANK (SOUTH DAKOTA), N.A., and Does 1 through 100,<br><br>        Defendant. | Case No.  CV08-6363 R (JWJx)<br><br>**Assigned to the Hon. Manuel L. Real**<br><br>**ORDER GRANTING CITIBANK'S MOTION TO COMPEL ARBITRATION**<br><br><br><br>**Complaint Filed:  July 31, 2008** |

Plaintiff filed this action on July 31, 2008 in California state court alleging in principal part that defendant Citibank (South Dakota), N.A. ("Citibank") failed to comply with Civil Code Section 11 (relating to the effect of deadlines falling on holidays on transactions governed by California law).  In the Complaint, Plaintiff alleges three Counts for:  (1) violation of California Civil Code Section 11; (2) violation of the Consumers Legal Remedies Act, California Civil Code Section 1750, et seq. ("CLRA"); and (2) violation of the Unfair Competition Law, California Business & Professions Code Section 17200, et seq. (the "UCL").

**[PROPOSED[ ORDER**

Citibank appeared, removed the action to federal court pursuant to 28 U.S.C. §§ 1331, 1332 and 1446, as amended in relevant part by the Class Action Fairness Act of 2005, and filed a motion to compel arbitration and stay proceedings. Plaintiff opposed the motion.

## BACKGROUND

Plaintiff's credit card account with Citibank is subject to a written credit card agreement (the "Card Agreement"). Plaintiff's Card Agreement provides that "[the] terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located." Declaration of Cathleen Walters, filed October 3, 2008 ("Walters Decl."), ¶ 5, Ex. 1, p. 10 (provision entitled "Applicable Law"). In addition, the Card Agreement sent to Plaintiff prior to the addition of the arbitration provision expressly authorized Citibank to change the terms of the agreement by following certain specific procedures. Id. ¶ 5, Ex. 1, p. 10 (provision entitled "Changing this Agreement"). Pursuant to those procedures, Citibank mailed a "Notice of Change in Terms Regarding Binding Arbitration to Your Citibank Card Agreement" (the "Arbitration Change-in-Terms") to Plaintiff with his October 2001 billing statement. Id. ¶¶ 6-7, Exs. 2, 4. The Arbitration Agreement includes specific language (underlined above) that requires that any arbitration may resolve only individual claims. Id. Ex. 2. The Arbitration Agreement also includes terms: (i) excluding small claims court actions; (ii) allowing for the parties to choose between nationally recognized arbitration firms, including the American Arbitration Association and the National Arbitration Forum; and (iii) allowing for the reimbursement and/or advancement of arbitration fees. Id. Ex. 2 at pp. 2-4.

Citibank printed the following message on Plaintiff's October 2001 account statement alerting him to the enclosed Arbitration Change-in-Terms:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CITIBANK CARD AGREEMENT.

Walters Decl., ¶ 7, Ex. 3. A second message on Plaintiff's November 2001 account statement reminded him of the Arbitration Change-in-Terms and advised him to call Citibank if he wanted another copy. Id., ¶ 8, Ex. 5.

Significantly, the Arbitration Change-in-Terms gave Plaintiff the opportunity to opt out of the Arbitration Agreement:

> If you do not wish to accept the binding arbitration provision contained in this change in terms notice, you must notify us in writing within 26 days after the Statement/Closing date indicated on your November 2001 billing statement stating your non acceptance…. If you notify us by that time that you do not accept the binding arbitration provisions contained in this change in terms notice, you can continue to use your card(s) under your existing terms until the end of your current membership year or the expiration date on your card(s), whichever is later. At that time your account will be closed and you will be able to pay off your remaining balance under your existing terms.

Walters Decl., ¶ 10, Ex. 2. Plaintiff did not opt out of the Arbitration Agreement. Id. ¶¶ 11-13, Ex. 6.

In February 2005, Citibank mailed another change-in-terms notice, which further advised Plaintiff of additional amendments to the Arbitration Agreement, including the removal of one of the arbitration firms. Id. ¶ 15, Ex. 8. Plaintiff also had the opportunity to opt out of these changes, but did not do so. Id. Instead, Plaintiff continued using the Account. Id. ¶ 15, Ex. 11.

Finally, in September 2005, Plaintiff contacted Citibank to request a pricing change on the Account. Walters Decl., ¶ 16, Ex. 12. Citibank agreed to change the pricing for the Account and, in doing so, mailed to Plaintiff a complete Card Agreement for the Account, which included the Arbitration Agreement, along with a pricing sheet that also noted the Account is subject to arbitration. Id. ¶ 16, Ex. 13. Again, Plaintiff continued to use the Account. Id. ¶ 16, Ex. 14.

## ANALYSIS

Plaintiff does not dispute the foregoing facts nor does he dispute that the instant arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1, et

1  seq.) ("FAA"), which mandates a liberal policy favoring the enforcement of
2  arbitration agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
3  460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Rather, Plaintiff argues that
4  the parties' arbitration agreement is unconscionable and unenforceable under
5  California law. This Court disagrees, and concludes that Plaintiff has not met his
6  burden to show that the arbitration agreement is invalid or does not encompass the
7  claims at issue. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92, 121 S.
8  Ct. 513, 148 L. Ed. 2d 373 (2000).

9      The Ninth Circuit's decision in Hoffman v. Citibank (South Dakota), N.A., ---
10  F.3d ----, 2008 WL 4554925 (9th Cir. Oct. 14, 2008), provides the proper framework
11  for analyzing plaintiff's arguments. Hoffman instructs that "[w]hen an agreement
12  contains a choice of law provision, California courts apply the parties' choice of law
13  unless the analytical approach articulated in § 187(2) of the Restatement (Second) of
14  Conflict of Laws … dictates a different result." Id., at *3. Under Restatement §
15  187(2), the court must first determine "'whether the chosen state has a substantial
16  relationship to the parties or their transaction, or ... whether there is any other
17  reasonable basis for the parties' choice of law.'" Hoffman, 2008 WL 4554925, at *3
18  (quoting Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 11 Cal. Rptr. 2d 330,
19  834 P.2d 1148, 1152 (1992)). Plaintiff does not dispute that this first step is satisfied.
20  See Opp. at 18:1-6.

21      The second step is whether the "'chosen state's law is contrary to a
22  *fundamental* policy of California.'" Id. (quoting Nedlloyd) (emphasis in original). "If
23  there is no such conflict, the court shall enforce the parties' choice of law." Discover
24  Bank v. Superior Court, 36 Cal. 4th 148, 174, 30 Cal. Rptr. 3d 76, ___, 113 P.3d
25  1100, 1117 (2005). On the other hand, if a conflict of fundamental public policy
26  exists, a third step then requires that the court "'determine whether California has a
27  materially greater interest than the chosen state in the determination of the particular
28  issue.'" Hoffman, 2008 WL 4554925, at *3 (quoting Nedlloyd). As set forth below,

Plaintiff cannot satisfy the second and third prongs of this test and, therefore, Citibank's arbitration agreement is enforceable.

The Hoffman Court opined that "California has a fundamental policy against unconscionable class arbitration waivers." Hoffman, 2008 WL 4554925, *5. Thus, according to Hoffman, "if Citibank's class arbitration waiver is unconscionable under California law, enforcement of the waiver under South Dakota law would be contrary to a fundamental policy of California." Id.  Here, the class arbitration waiver is not unconscionable under California law because Plaintiff had a meaningful choice to opt out of the Arbitration Agreement.  He, however, chose not to do so, thus defeating any claim of procedural unconscionability.  In arguing whether he had a "meaningful choice" to opt out of the Arbitration Agreement, Plaintiff ignores a relatively unique feature of the Arbitration Change-in-Terms.  Had Plaintiff elected to assert his opt-out rights, ***he could have continued using his card until the end of his membership year or the expiration date on his card, whichever came later***. Walters Decl., Ex. 2.  That is, he could have continued to use his card during this period and litigate any claims that arose from such use.  Although Plaintiff bears the burden of proof on this issue, see Washington Mut. Bank v. Superior Court, 24 Cal. 4th 906, 917, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001)), plaintiff submitted no declaration indicating that he lacked a meaningful opt-out right.[1]

Even if the Arbitration Agreement were found to be unconscionable under California law – thus, creating a conflict of policy per Hoffman – the inquiry would not end there.  Plaintiff still does not, and cannot, establish that California has a

---

[1]  Moreover, the Court notes that plaintiff is a licensed member of the California bar who renegotiated the terms of his Citibank agreement after the arbitration terms had been disclosed to him.  Indeed, his status as a lawyer, at least under the record presented here, does not make him a reasonable representative under Fed. R. Civ. P. 23 because there does not appear to be a class in the same situation that he presently is in, particularly when he is lawyer who renegotiated part of his contract with Citibank.

materially greater interest than South Dakota in a determination of this issue, and the contractual choice of South Dakota law therefore must be enforced.

Plaintiff focuses on the fact that he is a California resident, asserting claims based on California law, allegedly on behalf of a California class to argue that California's interest is materially greater than South Dakota's interest.  Plaintiff also maintains that he applied for and received his card in California, and paid his bill and primarily used the card in California.  See Opp. 20:6-10.  These arguments are not compelling.

To begin, the terms of credit between Plaintiff and Citibank – a national bank organized under federal law – are governed by the National Bank Act, 12 U.S.C. § 21 et seq., and its regulations, and not by California law.  This is illustrated by Plaintiff's claims in this case.  Plaintiff cannot engraft a California law regarding the effect of a holiday on a contractual duty to perform on a credit card transaction between a national bank whose credit terms are governed by South Dakota law.  Federal banking regulations make clear that a national bank may lend "*without regard to state law limitations*" that purport to govern, inter alia: "The terms of credit, including the *schedule for repayment of principal and interest*, amortization of loans, balance, *payments due*, [or] minimum payments…." 12 C.F.R. § 7.4008(d)(2)(iv) (emphases added).  Thus, federal law, and not state law, govern the payment schedule and payment due dates of a national bank's loans.  See, e.g., Rose v. Chase Bank USA, 513 F.3d 1032, 1038 (9th Cir. 2008) (National Bank Act preempted California law claims involving national bank's credit card loans).  Moreover, to the extent that state law applies, the parties' agreement is governed by South Dakota law, not California law. And Plaintiff has not advanced, nor could he advance, an argument that Section 11 raises a fundamental public policy of California that would require rejecting application of the law chosen by the parties.

More generally, South Dakota, where Citibank is located, has a compelling interest in applying its laws to regulate businesses operating within its

6
**[PROPOSED[ ORDER**

borders, while the bank has an equally compelling need to ensure that its transactions are governed by a common set of laws.  "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well." Restatement § 6, cmt. d.  Even more so than other interstate businesses, the national banking system fundamentally depends on allowing national banks to operate under a uniform set of laws.  This policy is reflected in the extensive federal oversight of national banks[2], as well as federal laws allowing national banks to "export" their home-state interest rates so that a single state's usury laws will apply to the bank's customers nationwide.  See Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp., 439 U.S. 299, 308, 99 S. Ct. 540, 545, 58 L. Ed. 2d 534 (1978); Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 737-38, 116 S. Ct. 1730, 1732, 135 L. Ed. 2d 25 (1996).  As the Office of the Comptroller of the Currency ("OCC") has further explained,

> When national banks are unable to operate under uniform, consistent, and predictable standards, their business suffers, which negatively affects their safety and soundness.  The application of multiple, often unpredictable, different state or local restrictions and requirements prevents them from operating in the manner authorized under Federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure.

OCC Final Rule, Bank Activities and Operations, 69 Fed. Reg. 1904, 1908 (Jan. 13, 2004).  In light of these concerns, it would make little sense for a court to require application of 50 states' laws (including various state statutes, regulations, judicial decisions, and common law) on something as fundamental to the banking business as which state's contract law will apply.  Put differently, because preemptive federal law

---

[2] See, e.g., 12 C.F.R. § 7.4008 (setting forth preemption standards for non-real estate lending activities); 12 C.F.R. § 7.4009 (preemption standards for national bank operations); OCC Final Rule, 69 Fed. Reg. 1904 (Jan. 13, 2004) (discussing Final Rule regarding OCC preemption); Rose v. Chase Bank, N.A., 513 F.3d 1032 (9th Cir. 2008); American Bankers Ass'n v. Lockyer, 239 F. Supp. 2d 1000 (E.D. Cal. 2002) (finding OCC preemption of California statute which required certain disclosures to be placed on credit-card billing statements).

1  exclusively governs and regulates the lending operations of national banks, like
2  Citibank, California has no greater interest than a national bank's home state with
3  respect to the terms of consumer credit contracts.
4      Accordingly, the foregoing choice of law analysis compels the conclusion that
5  South Dakota law, not California law, should be applied in determining the validity of
6  the parties' arbitration agreement.  Plaintiff does not dispute, and essentially concedes,
7  that Citibank's arbitration agreement is valid and enforceable under South Dakota law,
8  which is also confirmed by the Ninth Circuit in <u>Hoffman</u>.  <u>See</u> <u>Hoffman</u>, 2008 WL
9  4554925, n.2 ("We agree with the district court's conclusion that Citibank's class
10 arbitration waiver is not procedurally unconscionable under South Dakota law and
11 therefore is enforceable if South Dakota law controls." (citations omitted)).

## CONCLUSION

13     For the reasons set forth above, the Court GRANTS defendant Citibank's
14 motion to compel and to stay this action pending the resolution of the arbitration
15 proceedings.

16     **IT IS SO ORDERED.**

18 Dated:  _Dec. 19_, 2008     _____
                                      **The Honorable Manuel L. Real**
19                                       **United States District Court**
                                      **Central District**